First National Bank of Marshall et al. v. William Myer & Co.

Decided March 3, 1900.

**Burden of Proof—Identification of Goods.**

Plaintiffs shipped to R., a merchant, on approval, a lot of laces, and R., having thereafter conveyed his entire stock to defendants, plaintiffs sued for the value of the lot, on the theory, which was controverted, that the laces were among the stock so conveyed; and evidence was introduced tending to identify one piece of the lot among the stock in defendants' possession. Held, that it was error for the court to charge that if plaintiffs had proven that any of their goods went into defendants' possession, and they made no effort to ascertain what part of the goods they did receive, and the evidence does not show the goods that were received with certainty, then defendants would be liable for the entire lot, since the burden of proof was on plaintiffs to show that their goods went into defendants' possession, and the requisite proof could not be thus supplied by resort to presumption.

Appeal from the County Court of Harrison. Tried below before Hon. H. T. Lyttleton.

*T. F. Young* and *M. R. Geer*, for appellants.

*James Turner, C. B. Mitchell,* and *John M. Gardner*, for appellees.

FINLEY, Chief Justice.—This suit was brought by William Myer & Co., a mercantile firm of New York, against W. M. Robertson and Sol Dreyfus, composing the firm of Robertson, Dreyfus & Co., merchants at Marshall, the First National Bank, the Marshall National Bank, the H. B. Claflin Company, and A. B. Mitchell. The object of the suit is to recover the value of a certain lot of goods, consisting of laces, embroideries, and handkerchiefs, alleged to have been shipped by the plaintiffs to Robertson, Dreyfus & Co., upon the condition that they could examine them, and if they approved them, they could purchase them by payment in cash of the prices stated. It is alleged that they received the goods, put them into their stock, and did not pay cash for them, which was the condition upon which title was to pass. There are other grounds set out showing that title to the goods did not pass from plaintiffs, unnecessary here to state. It was further alleged that said Robertson, Dreyfus & Co. delivered these goods, embraced in their large stock of merchandise, to the two banks, the Claflin Company, and Mitchell; that they had appropriated them, and a recovery was sought for the value of the goods. The last named defendants were creditors of Robertson, Dreyfus & Co., and bought their entire stock in settlement of such indebtedness. The case was.

tried and resulted in a judgment against the said purchasers from Robertson, Dreyfus & Co., for the value of the full bill of goods shipped to them by William Myer & Co. The said defendants have appealed.

The appellants complain of a special charge given, to the effect that if plaintiffs had proven that any of their goods went into the possession of said purchasing defendants, and if they refused to deliver them to the plaintiffs, and made no effort to ascertain what part of the goods they did receive, and the evidence does not show the goods that were received with certainty, then said defendants would be liable for the entire bill. In this connection we will notice their complaint at the seventh paragraph of the general charge, to the effect that while the burden of proof was upon plaintiffs, yet if they identified any portion of said goods in the possession of said defendants, then the burden was upon said defendants to show what portion of said goods they received, and unless they established what portion of said goods they did receive, they would be liable for the entire bill of goods, unless the evidence showed that they did not have the means of identifying the goods. In other words, if any part of the goods had been identified in the possession of said defendants, and they had the means of identifying the goods, they must establish with certainty the portion of the goods they did receive. The evidence showed that the goods were received by Robertson, Dreyfus & Co. Robertson, of the firm, testified that none of them were put into the general stock, but that the boxes containing them were put in the back room, and that they were all sold to peddlers before the sale of the entire stock to the purchasing defendants, and that none of them were embraced in the stock sold. The sale of the stock occurred about eleven days after the receipt of the goods. One of the plaintiffs' attorneys, with a bill of the goods and some samples of laces, demanded to inspect the stock of goods to ascertain whether any of the laces sued for were contained in the stock. The privilege was accorded him, and he found one piece of lace which he claimed corresponded with his sample, though it had no marks on it to show that it came from the plaintiffs. He then ceased his search and demanded the entire bill of goods, and his demand was refused, though he was told that he could take the piece that he claimed to identify by sample. It did not appear that the purchasing defendants possessed any knowledge of the particular goods, or means of identifying these goods.

It is quite clear that the defendants who purchased the stock from Robertson, Dreyfus & Co. should not be held liable to plaintiffs for the value of their goods, unless they were embraced in the stock when they got it. Whether they were in the stock at that time is at least questionable under the evidence. The identification of the one piece of lace is certainly not of a conclusive character, especially in the light of Robertson's testimony. The effect of the instructions to the jury were, as applied to the evidence, that if plaintiffs' attorney had

identified a piece of the lace in the stock, after its sale to said defendants, they must find against defendants the value of the entire bill of goods, unless the defendants had established with certainty the amount of the goods which they actually did receive. This was error. Morrison v. Adoue, 76 Texas, 261. In the case cited it is said: "Appellees were liable only for the value of such goods sold by appellants as were received by them, and in the absence of evidence showing what part of the goods they did receive, or that this can not now be accurately ascertained, resort should not be had to presumptions which may be drawn from facts proved." The charge not only violated the rule laid down in that case, by authorizing the presumption to be indulged by the jury, but it ran counter to another well established rule by requiring the defendants to establish with certainty the facts which would overcome such presumption. The trial court has no right to instruct the jury that any state of facts must be established with certainty. Baylor v. Hope, 81 Texas, 641; Stooksbury v. Swan, 85 Texas 571, and cases cited.

The burden was upon the plaintiffs to show that the goods went into the possession of the purchasing defendants before the plaintiffs were entitled to recover. There is no legal requirement that this fact should be proven by positive testimony; it may be proved by circumstances, but this does not affect the question of the onus probandi. Under certain states of circumstances, if an article of the bill of goods was proven to have been in the stock, the jury might reasonably have concluded that the entire bill of goods was in the stock, but this would only be a presumption of fact, which the court would not be warranted in telling the jury it could indulge.

The other assignments of error relate to questions sufficiently touched upon in the foregoing discussion of the charge.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*